RAILWAY EXPRESS AGENCY, Inc., v.
MARCHANT CALCULATING
MACH. CO.

No. 478.

Municipal Court of Appeals for the
District of Columbia.

March 27, 1947.

John E. Powell, of Washington, D. C. (Arthur P. Drury and John M. Lynham, both of Washington, D. C., on the brief), for appellant.

Rudolph H. Yeatman, Jr., of Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

HOOD, Associate Judge.

Several individuals, trading as Equitable Credit Company, and their agent, one Swett, sued Marchant Calculating Machine Co. for $636, the price of a calculating machine ordered and paid for by Swett as agent of the Credit Company; which machine was alleged not to have been delivered. The Marchant Company, admitting that the machine had been ordered and paid for, answered that it had been shipped through the Railway Express Agency and delivered to Swett. The Marchant Company also filed a third party complaint, naming the Express Agency as third party defendant, alleging that the machine had been delivered to the Express Agency for transportation to Swett, and there had been received from the Express Agency a copy of a receipt showing delivery to Swett and purporting to be signed by him. Judgment was sought against the Express Agency for any sum that might be adjudged against the Marchant Company in the main suit. The Express Agency in its answer asserted that its liability in no event could exceed $150, the value of the machine as declared by the shipper in the uniform express receipt.

The evidence showed that Swett ordered and paid for the machine, directing that it be shipped to him at Room 404, 930 F Street, Northwest, Washington, D. C.; that the machine was delivered by the Marchant Company to the Express Agency in California, express charges prepaid, with instructions to deliver it to Swett at the address stated; that prior to delivery the Credit Company and Swett moved from the stated address to another address, but did not notify either the Marchant Company or the Express Agency of the change of address; that when the machine arrived in Washington it was taken by an employee

of the Express Agency to the address to which it was consigned and there the new occupant of the office informed the employee that Swett had moved; that some days later the box was seen in the hall outside the office and the new occupant telephoned the Credit Company that a box for Swett had been left in the hallway and was told that it would be picked up; that the box was taken away several days later by an unknown person; and that neither the Credit Company nor Swett ever received the machine. A receipt purporting to be signed by Swett was offered in evidence but the trial court found that the signature was a forgery. The employee of the Express Agency who made the attempted delivery left the employ of the Agency shortly thereafter and could not be located at the time of trial. The trial court awarded judgment for $636 in favor of the Credit Company against the Marchant Company, and awarded judgment for the same amount in favor of the Marchant Company against the Express Agency. The Express Agency has appealed solely on the ground of the amount of the judgment against it.

The single question before us is whether the Marchant Company is entitled to recover $636, the full value of the machine, or $150, the declared value stated in the express receipt.

A memorandum by the trial court stated that the present case is not one of misdelivery but is one "of non-delivery occasioned by the misconduct of an employee" of the carrier; that the purported signature of the consignee on the receipt is a forgery; and that the case is controlled by the decision in Adams Express Company v. Berry & Whitmore Company, 35 App.D.C. 208, 31 L.R.A.,N.S., 309. In that case it was held that embezzlement by an employee of the carrier rendered inapplicable the limitation of liability contained in the express receipt. Here there is no expressed finding that the loss resulted from embezzlement or conversion by the carrier's employee, but appellee contends that such is the effect of the trial court's memorandum. Accepting appellee's contention, there is presented the question whether a limitation of liability protects a carrier when loss is occasioned through embezzlement or conversion by an employee of the carrier.

If the Berry & Whitmore decision is controlling the question must be answered in the negative. That decision has been criticized by many authorities on the ground that it fails to distinguish between a conversion by a carrier and a conversion by an employee of a carrier for his own benefit.[1] Despite that criticism we would feel bound by the decision except for the following reasons. The shipment in the Berry & Whitmore case occurred in 1905, prior to enactment in 1906 of the Carmack Amendment to the Interstate Commerce Act.[2] Prior to the Carmack Amendment interstate carriers were subject to varying degrees of liability imposed by statutes, decisions and regulations of the different states. The purpose of the Amendment was to achieve uniform liability for loss of or damage to goods transported in interstate commerce.[3] A long line of decisions of the Supreme Court hold that by reason of the Carmack Amendment the liability of an interstate carrier is controlled by acts of Congress, the contract of carriage and the common-law principles accepted and enforced in the federal courts.[4] They further establish beyond question the validity of a provision in a contract of carriage limiting liability to a valuation declared for the purpose of determining which of two alternative rates is applicable to the shipment.[5] The shipment in the in-

---

[1] Moore v. Duncan, 6 Cir., 237 F. 780; D'Utassy v. Barrett, 219 N.Y. 420, 114 N. E. 786, 5 A.L.R. 979; Henderson v. Wells Fargo & Co. Express, Tex.Civ.App., 217 S.W. 962; Illinois Cent. R. Co. v. Fontaine, 217 Ky. 211, 289 S.W. 263, 52 A.L. R. 1064.

[2] 49 U.S.C.A. § 20 (11).

[3] St. Louis, I. M. & S. R. Co. v. Starbird, 243 U.S. 592, 37 S.Ct. 462, 61 L. Ed. 917; Southern R. Co. v. Prescott, 240 U.S. 632, 36 S.Ct. 469, 60 L.Ed. 836; Adams Express Co. v. Croninger, 226 U. S. 491, 33 S.Ct. 148, 57 L.Ed. 314, 44 L. R.A.,N.S., 257.

[4] Southern Express Co. v. Byers, 240 U. S. 612, 36 S.Ct. 410, 60 L.Ed. 825, L.R. A.1917A, 197, and cases there cited.

[5] Union Pacific R. Co. v. Burke, 255 U. S. 317, 41 S.Ct. 283, 65 L.Ed. 656; Peyton v. Railway Express Agency, Inc., 316 U.S. 350, 62 S.Ct. 1171, 86 L.Ed. 1525.

stant case was interstate and the liability of the carrier must be determined by the Supreme Court cases interpreting the effect of the Carmack Amendment.

Under the Carmack Amendment limitation of liability is applicable in cases of failure to deliver, whether such failure be deemed a misdelivery or a non-delivery.[6] Under the federal law failure to deliver is not deemed a conversion, and the effect of the limitation cannot be avoided by suing in trover and laying failure to deliver as a conversion.[7] And the federal law will not permit the limitation to be escaped by a local law or decision that unexplained failure to deliver establishes a conversion.[8] Likewise, damage to the goods in course of transportation[9] or damage to the consignee resulting from delay in delivery are covered by the limitation.[10] The words of the statute "are comprehensive enough to embrace responsibility for all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation, which, as defined in the Federal Act, includes delivery." Georgia, F. & A. R. Co. v. Blish Milling Co., 241 U.S. 190, 196, 36 S.Ct. 541, 544, 60 L.Ed. 948. As we read the decisions a carrier cannot invoke protection of the limitation of liability in the event of a true conversion by the carrier itself, but the limitation is effective when loss results from a strictly personal conversion by an employee of the carrier for his own purpose and gain. As far as the limitation is concerned, we see no distinction in the cases between a loss caused by the negligence of an employee and a loss caused by conversion by an employee for his own benefit, free of any wrongful act on the part of the carrier.

Whether the loss in the case before us resulted from conversion by the Express Agency's employee or from negligence of the employee, our conclusion is that the limitation of liability based on the declared value of the lost article was effective and that the judgment against the Express Agency should have been limited to $150. The judgment will be modified accordingly and as so modified affirmed.

Modified and affirmed.

[6] Georgia, F. & A. R. Co. v. Blish Milling Co., 241 U.S. 190, 36 S.Ct. 541, 60 L. Ed. 948; Adams Express Co. v. Croninger, 226 U.S. 491, 44 L.R.A.,N.S., 257; American Ry. Express Co. v. Levee, 263 U.S. 19, 44 S.Ct. 11, 68 L.Ed. 140; Missouri Pac. R. Co. v. Boone, 270 U.S. 466, 468, 46 S.Ct. 341, 70 L.Ed. 688. See also Bank of California v. International Mercantile M. Co., 2 Cir., 64 F.2d 97, certiorari denied, 290 U.S. 649, 54 S.Ct. 66, 78 L.Ed. 563, and Vaughn & Vaughn v. Quincy, O. & K. C. R. Co., Mo.App., 123 S.W.2d 569.

[7] Georgia, F. & A. R. Co. v. Blish Milling Co., 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948.

[8] American Ry. Express Co. v. Levee, 263 U.S. 19, 44 S.Ct. 11, 68 L.Ed. 140.

[9] American Ry. Express Co. v. Lindenburg, 260 U.S. 584, 43 S.Ct. 206, 67 L. Ed. 414.

[10] Southeastern Express Co. v. Pastime Amusement Co., 299 U.S. 28, 57 S.Ct. 73, 81 L.Ed. 20.